## THE UNITED STATES DISTRICT COURT IN THE EASTERN DISTRICT OF PENNSYLVANIA

### CIVIL ACTION FILE NUMBER _____

Derrick Jacobs

**Plaintiff**
**Pro se**

v.

City of Philadelphia, et al.
Philadelphia Police Commissioner Danielle Outlaw in her official and individual capacity, Deputy Police Commissioner Christine Coulter in her official and individual capacity, District Attorney Lawrence Krasner in his official and individual capacity, Assistant District Attorney Tracy Tripp in her official and individual capacity, Deputy Police Commissioner (now Chief Inspector) Dennis Wilson in his official and individual capacity, Inspector Benjamin Naish (now Deputy Police Commissioner) in his official and individual capacity, Inspector DF Pace in his Official and individual capacity and Lieutenant Jason Hendershot in his official and individual capacity, Lieutenant Patrick Quinn in his official and individual capacity.

**Defendants**

---

### NATURE OF ACTION

COMES NOW, Plaintiff (pro se) Derrick Jacobs ("Jacobs") to file his Complaint and seek Immediate Preliminary Injunctive Relief from violations of Section 1983 of the Civil Rights Act of 1871 42 U.S.C. § 1983 ("Section 1983").

The Plaintiff seeks fifty million dollars USC ($50,000,000.00) for actual damages, compensatory damages, punitive damages, liquidated damages and interest. The plaintiff also seeks immediate preliminary injunctive relief (placed in IOD status until adjudication), for the Defendants' violation of the Plaintiff's United States Constitutional Rights.

## **INTRODUCTION**

Jacobs is a citizen of the United States of America, residing in the State of Pennsylvania. Jacobs deserves the right to Life, Liberty and the Pursuit of Happiness, which is his unalienable Right (Declaration of Independence, paragraph two). All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. NO STATE shall make or enforce ANY law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny any person within its jurisdiction the EQUAL protection of the laws (Amendment 14).

Jacobs observed corruption committed by Assistant District Attorney, Tracy Tripp of the Philadelphia District Attorney's Office, headed by Lawrence Krasner.

Jacobs followed Philadelphia Police Department policy and reported the corruption to then Philadelphia Police Commissioner, Christine Coulter.

Jacobs also attempted to expose the corruption and was retaliated against and threatened with criminal prosecution and arrest by the Philadelphia District Attorney's Office.

2

Jacobs filed a Federal Civil Action (19-cv-4616) seeking damages.

As a result the Philadelphia Police Department, headed by Christine Coulter and Danielle Outlaw conspired with the Philadelphia District Attorney's Office to remove Jacobs from his current assignment and initiate disciplinary action against him which includes suspension and termination.

Defendants' proceeded in an arbitrary and capricious manner against Jacobs; violating the United States Constitution, federal and state laws, The Mission Statement and Directives of the Philadelphia Police Department.

## JURISDICTION AND VENUE

This action arises under 42 U.S.C. 1983 of the United States Constitution, and the First and Fourteenth Amendments to the United States Constitution.

This Court has jurisdiction under 28 U.S.C. § 1331 and 1332 of the United States Constitution and the First and Fourteenth Amendments to the United States Constitution.

This Court has jurisdiction because this action arises under the United States Constitution and laws of the United States.

3

## PARTIES

Plaintiff, Derrick Jacobs is an adult male individual. Jacobs is employed as a Philadelphia Police Detective. He began his career as a Philadelphia Police Officer in January 1996 and was promoted to Police Detective in December 1998. Jacobs is a decorated Officer and Detective. Jacobs has received many honors, certifications and assignments. Jacobs was vetted and received the highest security clearances for the Papal visit and Democratic National Convention. Jacobs also received certification and performed duties as a hostage negotiator. While still a rookie, Jacobs was nominated for Officer of the Year (did not win). Over the years, Jacobs' assignments included Divisional Detective, Homicide Detective, and original member of the Officer Involved Shooting Investigation ("OISI") Unit, where Jacobs is the only African American Detective. Jacobs brings this complaint as a private citizen.

Defendant City of Philadelphia ("City") is a municipality in the Commonwealth of Pennsylvania.

The City owns, operates, manages, directs and controls the Philadelphia Police Department ("PPD") and Philadelphia District Attorney's Office ("DAO") which employs the individual defendants named herein who at ALL relevant times were employed by the City, PPD and the DAO, acting under color of state law, and operating pursuant to official policies, customs or practices of the City, PPD and DAO.

At all relevant times, the City acted or failed to act through its agents, servants and employees, including the individual Defendants named herein, each of whom were acting within the course and scope of their employment.

4

Defendant, Lawrence Krasner ("DA Krasner") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Tracy Tripp ("ADA Tripp") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Danielle Outlaw ("PC Outlaw") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Christine Coulter ("DC Coulter") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Dennis Wilson ("CI Wilson") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Benjamin Naish ("DC Naish") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, DF Pace ("Pace") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Jason Hendershot ("Hendershot") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendant, Patrick Quinn ("Quinn") is an adult individual and a citizen of the Commonwealth of Pennsylvania who maintains a principal place of business in the City of Philadelphia.

Defendants, City, DA Krasner, ADA Tripp, PC Outlaw, DC Coulter, CI Wilson, DC Naish, DF Pace, Hendershot and Quinn are hereafter individually and collectively referred to as "Defendant(s)."

Defendants were "employers" and Plaintiff was "employee" within the meaning of applicable law.

Defendants are being sued in the individual and official capacities.

## FACTS

Jacobs is a United States citizen.

The Declaration of Independence allows Jacobs to Life, Liberty and the Pursuit of Happiness.

The United States Constitution allows Jacobs freedom of speech (1st Amendment) and due process of law (14th Amendment).

Jacobs was denied ALL by the Defendants. Defendants also engaged and conspired in a course of retaliation against Jacobs for exercising his Constitutional Rights.

The Defendants' conduct halted Jacobs' pursuit of happiness, trampled on his liberty and caused irreparable damage to his life.

Jacobs as a United States citizen is entitled to EQUAL JUSTICE UNDER THE LAW (Civil and Criminal).

JUSTICE is the GUARDIAN of LIBERTY.

6

On November 18, 2019 Jacobs authored another memorandum to Defendant Coulter titled "Urgent Matter Regarding Detective Derrick Jacobs #9116."

On November 18, 2019 an article was published on Bigtrial.net referencing Jacobs' civil complaint. The title of the article is "Detective: D.A. Tampered With Witness In Officer Involved Shooting."

On November 18, 2019 Defendant Hendershot informed Jacobs, he was taking Jacobs' police vehicle because Jacobs is not available when he visits his family who lives three hours away from Philadelphia.

Jacobs informed Hendershot that is not true.

Jacobs informed Hendershot he had always been available and returned for ALL assignments.

Jacobs informed Hendershot; Hendershot was not calling Jacobs in because Hendershot had to reduce overtime in the unit after being told to reduce overtime by his superiors in retaliation of grievances and filed lawsuits.

Jacobs also informed Hendershot if he wanted to take the vehicle he could, knowing it was in retaliation for the filed Federal Civil Complaint.

On November 26, 2019 Jacobs Commanding Officer, Defendant Hendershot, contacted Jacobs and informed him that then Deputy Police Commissioner Dennis Wilson wanted to speak with Jacobs in the Deputy's Office immediately.

Jacobs informed Hendershot that he was in the area and would be there shortly.

Jacobs immediately reported to the Deputy's Office.

Jacobs arrived at DC Wilson's Office in less than fifteen minutes. Jacobs was instructed to the waiting area for Deputy Wilson.

While waiting for DC Wilson, Jacobs observed Inspector Francis Healy ("Healy").

Healy looked in Jacobs direction and immediately and abruptly (almost like a cartoon character) reversed direction, avoiding Jacobs.

Moments later, Jacobs was escorted into DC Wilson's Office.

DC Wilson commended Jacobs on his fight against the corruption at the DAO. DC Wilson also acknowledged the corruption at the DAO.

Wilson then informed Jacobs he was not approving Jacobs request to speak with Police Commissioner Coulter because they did not want to be witnesses in Jacobs' civil litigation.

Wilson asked Jacobs to speak with the PA Attorney General's Office ("AGO") regarding the criminal activity and proceeding with the prosecution of the DAO.

Jacobs informed Wilson he believes there's a conflict of interest with the AGO because of Attorney General Christopher Phillips' involvement in the Pownall (Officer Involved Shooting) investigation.

Jacobs and Deputy Wilson continued the conversation.

9

Jacobs told Deputy Wilson anytime an allegation is made against a Philadelphia Police Officer; action is taken immediately against the Officer by Krasner and the DAO. Jacobs stated, in this case there is obvious corruption on the part of the DAO and the Department is doing nothing about it.

Jacobs' informed Deputy Wilson of the bigtrial.net article.

Deputy Wilson acknowledged he knew of the article.

Jacobs also informed Deputy Wilson bigtrial.net would not be the only media outlet that Jacobs would use to expose the corruption at the DAO.

Jacobs informed Deputy Wilson that Chris Palmer of the Philadelphia Inquirer and other media outlets have contacted Jacobs regarding his litigation.

Deputy Wilson replied he did not have any issue with Jacobs speaking with the media.

Deputy Wilson, once again informed Jacobs he would be returning Jacobs' memorandum to the Commissioner back "down the chain" with the disapproval.

Deputy Wilson's only request was that Jacobs contact the AGO regarding the investigation and let him know the results.

Deputy Wilson also acknowledged that Jacobs was being **"victimized"** by the DAO.

The conversation was a cordial, law enforcement concentrated conversation. The conversation discussed the issues at hand and ended pleasantly, in Jacobs' opinion.

On November 27, 2019 Jacobs contacted the AGO. The AGO informed Jacobs due to Christopher Phillips involvement in the Pownall investigation, there would be a conflict of interest in this matter.

Jacobs immediately informed Hendershot and asked Hendershot to contact Deputy Wilson with this information.

Jacobs wanted Deputy Wilson to contact the US Attorney so a criminal investigation could be started; honoring the conversation of the previous day.

Jacobs asked Hendershot on numerous occasions, almost daily, if Deputy Wilson had responded. Hendershot's responses were always that Deputy Wilson had not responded. Defendant Naish is in the chain of command as Inspector directly above Hendershot.

On January 14, 2020 Jacobs, once again, asked Hendershot if he has received any information from Deputy Wilson about referring the complaint to US Attorney, William McSwain. Hendershot replied he has tried on multiple occasions and has not received a response from Deputy Wilson.

Jacobs informed Hendershot he is trying to respect the conversation in Deputy Wilson's Office.

On January 18, 2020 Jacobs participated in law enforcement podcast Search Warrant, Clear and Present Danger.

During podcast Jacobs discussed his litigation against the City of Philadelphia and the District Attorney's Office.

11

On January 22, 2020 Hendershot informed Jacobs; Defendant Wilson wants a disciplinary investigation started against Jacobs immediately for his participation in the Search Warrant podcast.

Jacobs informed Hendershot, they are coming after his job and will charge him with Conduct Unbecoming.

Hendershot replied, you didn't do anything wrong. The most they could give you is a counseling memo.

Jacobs informed Hendershot the Deputy Commissioner does not start a disciplinary investigation against you for a counseling memo.

Jacobs tells Hendershot they are letting criminals at the DAO run free while they retaliate against me for exposing it.

This was the first information received from Defendant Wilson after Jacobs' multiple attempts to confirm if Defendant Wilson had referred Jacobs' complaint of corruption to the US Attorney for a criminal investigation per the discussion and agreement in Wilson's office on November 26, 2019.

Defendant Wilson was informed by multiple parties the disciplinary actions he initiated against Jacobs would be deemed and viewed as retaliatory and possibly illegal.

Defendant Wilson was advised by the parties not to pursue this disciplinary action against Jacobs.

On January 27, 2020 Defendant Hendershot provided Jacobs with a memorandum notifying him of a disciplinary interview.

12

The disciplinary interview was for Jacobs' participation in the podcast.

On January 27, 2020 Jacobs responded to Defendant Wilson's betrayal and retaliatory actions.

Jacobs authored a memorandum to Defendant Wilson titled "Search Warrant Podcast regarding criminal activity by the Philadelphia District Attorney's Office."

Jacobs informed Defendant Wilson he was retaliating against Jacobs for reporting corruption.

Jacobs informed Defendant Wilson this action is in violation of Jacobs' Constitutional Rights and is clearly 1st Amendment retaliation.

Jacobs informed Defendant Wilson he does not know if he is acting alone in this retaliatory act or in concert with his conspirators.

On January 30, 2020 Hendershot conducts disciplinary interview with Jacobs. FOP representative, Scott Bradley was present.

On January 30, 2020 Jacobs' authors a memorandum to Defendant Coulter titled "RELEASE OF INFORMATION TO ALL MEDIA SOURCES REGARDING CORRUPTION."

On February 10, 2020 Jacobs authored a memorandum to NEW Philadelphia Police Commissioner Danielle Outlaw. **This was Commissioner Outlaw's FIRST official day as Philadelphia Police Commissioner.**

The subject line of the memorandum is "Urgent Matter Regarding Detective Derrick Jacobs #9116."

Jacobs requested an opportunity to discuss corruption and criminal activity with Defendant Outlaw.

13

On February 10, 2020 retaliatory disciplinary charges (75-18s) was authored by Defendant Pace per Defendant Hendershot against Jacobs for his participation in the podcast and exercising his First Amendment RIGHTS.

On February 11, 2020 Hendershot calls Jacobs into his office.

Hendershot tells Jacobs "you were right and I was wrong. It's worse case scenario. They are charging you with **Conduct Unbecoming Unspecified.**"

Defendant Hendershot presented the disciplinary charges to Jacobs.

The action resulted in Jacobs being charged with **CONDUCT UNBECOMING AN OFFICER** and Neglect of Duty. These charges come with a penalty of **TERMINATION.**

Defendant Wilson ordered the disciplinary action. Defendant Hendershot witnessed the disciplinary action against Jacobs. Defendant Pace approved the disciplinary action against Jacobs.

Jacobs charged with "**CONDUCT UNBECOMING.**"

Jacobs reporting of corruption is grounds for termination.

No one besides Jacobs was interviewed prior to the charges.

This was done to **constructively discharge** Jacobs from the Philadelphia Police Department.

The initiator(s), author(s) and/presenter(s) should be investigated for Title 18 violations, which Jacobs intends to pursue.

On February 13, 2020 Jacobs receives credible information new Philadelphia Police Commissioner, Danielle Outlaw, will take Commissioner's Direct Action ("CDA") against Jacobs. The action will result in arbitrary discipline against Jacobs when he returns to work (Jacobs on vacation February 13 and 14).

Jacobs takes vacation time to avoid discipline until February 25, 2020, when he starts using his sick time while waiting for response from Commissioner Outlaw.

On March 2, 2020 Jacobs asked Hendershot to be carried in Injured On Duty ("IOD") status because of the actions of the Philadelphia Police Department ("PPD").

Jacobs informs Hendershot he should not be using his own sick time because of the corruption that has now infiltrated the PPD against him.

On March 3, 2020 Hendershot asks Jacobs to contact headquarters.

Hendershot informs Jacobs he cannot be carried IOD and would have to continue to use HIS SICK TIME.

Hendershot informed Jacobs he had spoke with the Commanding Officer (did not provide name) of that unit, who stated you cannot be carried IOD for job related stress.

Jacobs disagreed and informs Hendershot the STRESS is because the Department is trying to fire him, not because of something that happened off-duty.

On March 4, 2020 Hendershot contacts Jacobs and informs him he will be taking his police vehicle.

On March 5, 2020 Hendershot takes Jacobs police vehicle.

On March 6, 2020 Jacobs authored a memorandum to Defendant Outlaw.

The subject line of the memorandum is "Departmental and Criminal actions by Deputy Police Commissioner Christine Coulter, Deputy Police Commissioner Dennis Wilson and Inspector DF Pace."

Jacobs referenced previous memorandum sent to Defendant Outlaw on February 10, 2020. Jacobs asks Defendant Outlaw for a criminal investigation for the acts committed against Jacobs for being a Whistleblower.

Jacobs listed the departmental and criminal acts committed against him by the defendants.

Jacobs also informed Defendant Outlaw it was in her power to stop these actions from continuing.

On March 12, 2020 Hendershot contacts Jacobs by text and asks Jacobs to call him.

Hendershot informs Jacobs he has to report to Internal Affairs ("IA") because of the memorandum he sent to PC Outlaw on March 6, 2020.

Hendershot never tells Jacobs who gave the order.

Jacobs asked Hendershot who is the person at IA.

Hendershot tells Jacobs SOMEONE will interview him regarding Jacobs' allegations.

Jacobs informed Hendershot he wished to speak with Commissioner Outlaw and he had already provided a written interview.

16

Jacobs stated the people at IA report to Deputy Wilson.

Hendershot asked Jacobs to speak with an FOP attorney for counsel to address his concerns.

Jacobs contacted the attorney who informed Jacobs it was a set up to get Jacobs not to fully co-operate and charge Jacobs with Conduct Unbecoming an Officer and immediately dismiss Jacobs.

Jacobs called Hendershot and informed him of the attorney's advice. Jacobs firmly re-iterated his position of speaking with PC Outlaw.

On **March 24, 2020** Hendershot contacts Jacobs via text message and states "Hi Jake, do you have a sick note for this pay period?"

Jacobs responds "Yes. Have you received the response back from my memo up the chain."

Hendershot replied "I have not. Can you please forward your sick note?"

Jacobs replied "I will. Can you let them know I need the response. Thos (actual text) is not acceptable. I also will be getting you the sick note for the next pay period. This (corrected text). They took 10 days to threaten my career and conspire with criminals.

Hendershot replied "Received."

On May 18, 2020 Jacobs authored a memorandum to Defendant Outlaw.

The subject line on the memorandum is "Departmental and Criminal actions by Deputy Police Commissioner Christine Coulter, Deputy Police Commissioner Dennis Wilson and Inspector DF Pace."

Jacobs referenced previous memos sent to Defendant Outlaw on February 10, 2020 and March 6, 2020.

Jacobs also inquired to Defendant Outlaw the origins of the arbitrary and capricious adverse employment actions against Jacobs.

Jacobs also inquired of Defendant Outlaw if the rumor of her violating Jacobs' departmental due process and initiating Commissioner's Direct Action ("CDA") was true.

On August 3, 2020 Jacobs authored another memorandum to Defendant Outlaw.

The subject line of the memorandum is "Failure to respond to Departmental and Criminal actions by Deputy Police Commissioner Christine Coulter, Deputy Police Commissioner Dennis Wilson, Inspector DF Pace, District Attorney Lawrence Krasner and Assistant District Attorney Tracy Tripp."

Jacobs referenced the previous memorandums sent to Defendant Outlaw.

Jacobs informed Defendant Outlaw that he has waited patiently for over 120 days for a response and action.

Jacobs also stated that he has been informed that Defendant Outlaw knows of the situation and intends to take CDA against Jacobs.

18

Jacobs also informed Defendant Outlaw of the civil and criminal statutes being violated by members of her Command staff.

On August 18, 2020 Jacobs resends the August 3, 2020 memorandum to Defendant Outlaw.

On August 25, 2020 Jacobs resends the August 3, 2020 memorandum to Defendant Hendershot for additional dissemination.

August 26, 2020 PC Outlaw sends Jacobs an email in response to Jacobs August 3, 2020 memorandum.

PC Outlaw informs Jacobs she never received previous correspondence sent to her by Jacobs. PC Outlaw informs Jacobs, due to his pending litigation, she cannot comment and directed Jacobs to City Solicitor, Jennifer MacNaughton (Never responded to whether or not she would be taking CDA against Jacobs).

On August 27, 2020 Jacobs submits a memorandum to PC Outlaw by email.

Jacobs attaches all members that would have had knowledge of previously submitted memorandums that PC Outlaw informed Jacobs were never received.

The subject line of the memorandum is "Departmental and Criminal actions by members of the Philadelphia Police Department's Command Staff."

Jacobs addresses multiple concerns. One particular concern was that Jacobs was told to go to Internal Affairs based upon memorandum authored on March 6, 2020. If Defendant Outlaw did not receive the memorandum, who made the decision for Jacobs to report to IA (the setup)? SOMEONE OR ALL are LYING (CORRUPTION). Barzini(s) will be exposed.

Another concern was Defendant Outlaw not responding to the CDA question posed in the previous memorandums.

Besides the civil violations being committed by Defendant Outlaw's command staff, Jacobs also informed Defendant Outlaw of the Federal Criminal Statutes, in Jacobs' opinion, the defendants were violating (Title 18 U.S.C sections 241 and 242).

On August 28, 2020 Jacobs sent an email to Jennifer MacNaughton, per PC Outlaw's request. PC Outlaw is attached to the email.

The subject line of the email is "Departmental and Criminal violations by the Philadelphia Police Department Command Staff".

September 1, 2020 Jennifer MacNaughton replies to Jacobs' email. PC Outlaw is attached to response.

Ms. MacNaughton informed Jacobs and Defendant Outlaw she is only involved in the civil matter involving the City, DAO, the DA and Tracy Tripp.

Ms. MacNaughton informed Jacobs and Defendant Outlaw she is not involved in the departmental and criminal actions of the PPD.

On September 24, 2020 Jacobs emails Defendant Outlaw previous correspondence sent to her that she informed Jacobs she had not received. Jacobs attaches parties (Command Staff) who should have had previous contact with the correspondence.

On September 24, 2020 Jacobs submits a memorandum through email to Defendant Outlaw and members of her Command Staff.

The subject line of the memorandum is "Departmental and Criminal actions by members of the Philadelphia Police Department's Command Staff".

Jacobs informed Defendant Outlaw he is exhausting HIS SICK TIME **(Constructive Discharge)** while waiting for a response from her regarding the criminal actions by members of her staff.

Jacobs asked Defendant Outlaw for an immediate investigation and to be placed in IOD status and his sick time (over 1700 hours) restored while the investigation takes place.

Once again, Jacobs inquired about the CDA.

On October 6, 2020 Jacobs submits a memorandum to PC Outlaw.

The subject line of the memorandum is "Departmental and Criminal actions by members of the Philadelphia Police Department's Command Staff."

Jacobs addresses his frustration of repeated attempts to have an investigation into the numerous acts of criminality committed by the defendants.

Jacobs informs Defendant Outlaw there were only two scenarios for her actions and/or failure to act. One is the illegality is being committed without her knowledge (documents submitted by Jacobs to defendant). Two the defendant is complicit in the criminality.

**On October 9, 2020** Lieutenant Patrick Quinn of the Philadelphia Police Department Commissioner's Office sends Jacobs a threatening email in response to Jacobs October 6, 2020 memorandum to PC Outlaw. Lieutenant Quinn, representing PC Outlaw, informed Jacobs that it is **"INAPPROPRIATE AND DISRUPTIVE"** for Jacobs to continue contacting PC Outlaw regarding corruption.